## No. XIII.

### THOMAS CAYCE V. HINTON CURTIS.

#### (See Note 15.)

*Appeal from Matagorda County.*

TERRELL, JUSTICE.—This cause comes up on an appeal from the District Court of Matagorda County to reverse a judgment rendered on a motion to quash an execution which had been issued by the clerk of that court in favor of the appellee against the appellant, upon what is termed in common parlance, a twelve month's bond. The bond was taken under the provisions of the eighth section of an act, "entitled an act for the collection of the amounts due on judgments of the Supreme, district and county courts."

Two grounds were taken in support of the motion, viz: First, that the bond upon which the execution issued was not under seal; and second, that the sheriff had made no return on the original execution under which the property was sold and for the payment of which the bond was given.

The court below refused to quash on either ground and the cause is brought here for the reconsideration of that decision.

On the first point it is urged by the counsel for the appellant that the word "bond," used in the statute, being a common law term, we must refer to the common law for its legal signification; and that by that law no instrument is a bond which is not under seal. The truth of the proposition that sealing is an absolute requisite to the validity of a bond at common law is readily admitted; but the applicability of that rule to the case under consideration is not perceived. This bond was taken at a

---

**Note 11.**—Raquet v. Nixon, p. 386.
    Attachment is an auxiliary process and plaintiff may proceed to judgment when it is quashed. Sydnor v. Chambers, Dal., 601; Cloud v. Smith,

time when the common law afforded no rule of decision or practice in this country; and consequently that law can not be legitimately resorted to, even for the purpose for which it is invoked by the counsel for the appellant, unless it be shown that the civil law (which under certain modifications was at that time the law of the land) had no term of similar import; for we regard it as a correct rule of construction, that where technical terms are used in a statute they are to be referred for their signification to terms of similar import in the system of laws which prevails in the country where the statute is passed, and not to another system which is entirely foreign to the whole system of municipal regulations by which that country is governed. 3 Martin, 185; 7 Martin (N. S.), 162

Were a term of art or science wholly unknown to the laws of the country, and which in itself imported a definite meaning, to be employed in a statute, then indeed the court would be compelled, ex necessitate rei, to look to the particular art or science from which it was taken, for its definition; but when the general or established law affords an equivalent term to the one used in the statute, which is well known and defined in its signification and operation, it can not be doubted that the Legislature intended to give to the new word only that force and signification which the old one possessed. In the civil law there is a term, and one in very common use, too, which is equivalent to the word "bond" in the common law. That term is "obligation," which is defined to be, first, "the binding power of any contract or agreement," and second, "a notarial instrument, or deed." This definition, embracing as it does all the essential properties of a bond, shows that the two words are used correlatively under the two systems. The word "obligation," it is true, is one of more extended signification than the word "bond," because it not only embraces all such undertakings as would at common law require a technical bond to sustain them; but it also embraces such other undertakings as are known to that system by the term "parol contracts." But the simple fact of its being a term of more comprehensive legal signification affords no presumption that in particular instances it is not the equivalent word; it may be said to be the generic term, and the other the species.

"Obligation," then, being equivalent under the civil law to the word "bond" in the common law, we are of the opinion that the latter term when employed in the statutes of the country, previous to the adoption of the common law without other definition, is to be referred to the civil law for its meaning, its force, and its legal construction; and that as

1 T., 611; Chevallier v. Williams, 2 T., 239; Green v. Hill, 4 T., 465; Sydnor v. Totman, 6 T., 189; Campbell v. Wilson, 6 T., 379, 392; Moore v. Corley, 4 App. C., sec. 139. The suit abates when writ is quashed if personal judgment can not be rendered against defendant. Savings Institution v. Burrow, 37 T., 88; Stewart v. Anderson, 70 T., 588; Hochstadler v. Sam, 73 T., 315; Rogers v. Burbridge, 5 T. C. A., 67. Is a harsh and summary remedy and all precedent conditions must be strictly complied with. Fowler v. Poor, Dal., 401; Sloo v. Powell, Dal., 467; Gregg v. York, Dal., 528; Sydnor v. Chambers, Dal., 601; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Totman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy,

the seal, not being known to the latter, was never required to give effect and validity to the one, we are satisfied that it is not essential to the validity of the other.

There is another ground on which we should hold this instrument to bind the parties according to the terms of the statute which authorizes it to be taken. It is a well established principle in the civil law, that "in whatever way a party binds himself, he shall remain bound." 5 Martin, 194; 4 Martin (N. S.), 25, 116; 3 Martin (N. S.), 517. The appellant was the purchaser of property at sheriff's sale, and for the purchase money of which, he was, by the statute, entitled to a credit of twelve months, provided he gave bond for the payment of the money at the expiration of that time. In consideration of this right, and for the purpose of getting immediate possession of the property, he bound himself in writing to pay the money as directed by the statute; and according to the above mentioned principle, he must remain bound in the terms of his obligation; and upon his failing to comply with those terms, the statute gave the remedy, viz., an execution upon the bond.

We are therefore unanimously of the opinion that the court below did not err in refusing to quash the executions, for the reasons presented in the first ground upon which the motion was predicated.

Upon the second point also we have no hesitation in deciding that there is no error in the judgment rendered by the court below. The statute does not require that the sheriff should have made any return in writing on the original execution; had it done so, however, we should have considered the requirement as only directory to the sheriff—and consequently could not impair the plaintiff's right under the law, in the security which was given for the purchase money of the property sold under execution for his benefit. 12 Wheat., 64; 6 C. R., 440.

We are therefore of the opinion that the judgment of the District Court for Matagorda County was correct, and order that the same be affirmed with costs.

*Affirmed.*

## No. XIV.

### THOS. CAYCE v. HORTON AND CLEMENTS.

#### (See Note 16.)

*Appeal from Matagorda County.*

TERRELL, JUSTICE.—This cause being of similar character, turning upon the same points and governed by the same principles with that of

58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Hotmann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwartz v. Burton, 1 App. C., sec. 1216; Scram v. Duggan, 1 App. C., sec. 1269. No presumption will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T., 610; Focke v. Hardman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352. If the writ of citation is defective and the defect

Cayce v. Curtis, already decided, we refer to the opinion delivered in
that case for the reasons upon which our decision is made.

We affirm the judgment of the District Court of Matagorda County,
with all the costs accruing upon the appeal to this court.

*Affirmed.*

## No. XV.

### Ex Parte Colin De Bland.

#### (See Note 17.)

*Fort Bend County.*

TERRELL, JUSTICE.—This was a motion made by an attorney of the
District Court for the county of Fort Bend to dismiss all cases on the
docket of said court which had originated since the 19th day of August,
1839, and to adjourn the court until the next regular term. The grounds
in support of the motion are, that the clerk of the court was not elected
agreeably to the provisions of the Constitution and laws of the Republic,
but that he exercised the functions of the office by virtue of an appoint-
ment from the district judge. The first question for this court to decide,
and which controls the case, is whether we can take cognizance of the
case in the form in which it is brought before us. We are unanimously
of opinion that we can not.

The law relied upon in argument, as giving the court jurisdiction in
the case, is the third section of the act of Congress organizing the Supreme
Court, which says: "The said Supreme Court shall have jurisdiction
over, and shall hear and determine all manner of pleas, plaints, motions,
causes and controversies, civil and criminal, which may be brought before
it from any court in this Republic, either by appeal or other legal pro-
cess, and which shall be cognizable in the said Supreme Court, according
to the Constitution and laws of this Republic." The question here natu-
rally arises, has this case been brought here "according to the Constitu-
tion and laws of the Republic?" The "laws of the Republic" point out
the mode by which suits shall be brought in the different courts. This
court, possessing "appellate jurisdiction" only, can consequently take
cognizance of such cases only as are properly brought here from some
of the inferior courts. It therefore follows, as a necessary consequence,
that they must be brought into those inferior courts in the manner
pointed out by law; and if they are not so brought into the court below,
the defect can not be cured by an appeal to this court.

There are several methods known to the law by which causes may be
brought into the district court. The one generally adopted is by petition
and summons, and we do not say, if objection had been made to the writ
in any cause in the court, as having been issued by a clerk who had no

---

is discovered before defendant answers, a new writ may be awarded. If de-
fendant answers, he waives objections to process. Wescott v. Menard, Dal.,
503; Kavanaugh v. Brown, 1 T., 481; Cartwright v. Chabert, 3 T., 261; Wood v.

authority, the cause could not then properly have been brought here. Our statutes also authorize motions against officers of court in certain cases; but then the party is entitled to previous notice, that he may prepare for his defense. The most usual method perhaps of ascertaining whether an individual has authority to exercise the functions of an office is by an information in the nature of the ancient common law writ of quo warranto. None of these methods, nor any other pointed out by our statutes or known to the common law, having been pursued in this case, we can not take cognizance of it, but are compelled to declare the whole proceeding coram non judice, and consequently void. The case is therefore ordered to be stricken from the docket for want of jurisdiction.

*Dismissed.*

## No. XVI.

### REPUBLIC OF TEXAS v. THOMAS I. SMITH.

#### (See Note 18.)

*Appeal from Travis County.*

HANSFORD, JUSTICE.—From the record in this case it appears that Smith, the appellant, was indicted at the spring term of the District Court for Travis County for "holding a faro bank, for the purpose of playing at faro and inviting and receiving bettors," and at the fall term was tried, and the jury returned a special verdict of "guilty of dealing faro in the city of Austin, previous to 1840, and after the first of May, 1839." Upon the return of this verdict the appellant, by counsel, moved in arrest of judgment, upon the ground that Austin, where the offense was alleged to have been committed at the time charged in the bill of indictment, was within the territorial limits of Bastrop County. The motion was overruled by the court; and the appellant was ordered by the court to pay a fine in accordance with the statute passed May 26, 1837, entitled "An act to suppress gambling," of $500, together with costs of prosecution, and to remain in custody of the sheriff until the sentence of the court was complied with. From this judgment of the district court the appellant prayed an appeal to this court, and charges error in the court below in overruling the motion in arrest of judgment.

Before we proceed to the discussion of the question as to whether it was error or not in the court below in overruling the motion in arrest of judgment, we will meet and dispose of a preliminary question of paramount consideration, and that is, has the defendant in a criminal prose-

---

Smith, 11 T., 367; Yturri v. McLeod, 26 T., 84; Herndon v. Crawford, 41 T., 267; Armstrong v. Bean, 59 T., 492; Rice v. Peteet, 66 T., 568; Cahill v. Ry., 76 T., 100.

**Note 12.**—Guest v. Guest, p. 394.

Court has no power to enter an involuntary nonsuit. Allcorn v. Sweeney, Dal., 494; Sandoval v. Rosser, 86 T., 682, 686. Appeal does not lie from judgment of nonsuit by a justice of the peace on ground that plaintiff failed to appear. Morgan v. Johnson, 4 T., 117.

cution, upon an indictment in the district court, the right of an appeal to the Supreme Court? We think that he has. We believe that such a right is in accordance with the genius and spirit of our institutions and secured to him by the Constitution and laws of this country. And it must, we think, be conceded by everyone that it is a question, whether considered with reference to the infancy of our jurisprudence yet to be perfected by subsequent adjudication and the wisdom of the Legislature, or the almost untried harmony of our institutions, political as well as judicial, which have as yet been but slightly explored and partially developed, or the sacred character of the rights to the citizens, as one involving the most grand and solemn considerations.

The word "appeal" comes from the civil law; and the nature and operation of an appeal, in a technical sense, can not be a subject of doubt in proceedings governed by that law. Indeed, it is sometimes used to denote the nature of appellate jurisdiction, without any regard to the particular mode by which a cause is transmitted from an inferior to a superior jurisdiction. In this sense it is used by Blackstone when he speaks of the Court of Exchequer as a court that hath no original jurisdiction. So also the same elegant writer denominates the House of Peers of England as the Supreme Court of the Empire. See 3 Black. Com., 56.

There are some other senses in which the word occurs in the common law, which we may pass over in silence, as they have no application to the present inquiry.

Appeal ("appellatio" in the civil law) is defined—"ab inferioris judicis sententia ad superiorem provicare"—the removal of a cause from the sentence of an inferior to a superior judge; or as Blackstone has expressed it, "a complaint to a superior court of injustice done by an inferior one." Calveus has collected the definitions given by many learned civilians, but they all resolve themselves in the above. See 3 Black. Com., 312; Calveus' Lexicon, "Appellatio;" Shepherd's Abridgement, "Appeal." Each of these definitions accurately states the meaning but not the mode or effect of an appeal.

The remedy by appeal—as known and practiced in England—is in a great measure confined (for I speak not of appeals of death and of robbery, and of summary proceedings before magistrates) to courts of equity, admiralty, and ecclesiastical jurisdiction, in all of which no jury intervenes; and in each of those courts the judge is in general the sole arbiter both of the law and the facts, and the mode of proceeding is borrowed almost exclusively from the civil law.

---

**Note 13.**—Morton v. Gordon and Alley, p. 396.

Jurisdiction over person may be conferred by consent or by acts tantamount to consent. Green v. Hill, 4 T., 465; Campbell v. Wilson, 6 T., 379; Burnley v. Cook, 13 T., 566; Life Ins. Co. v. Ray, 50 T., 511; Galveston Co. v. Noble, 56 T., 575; Brooks v. Chatham, 57 T., 31; Glass v. Smith, 66 T., 548; Douglas v. Baker, 79 T., 499; Fairbanks v. Blum, 2 T. C. A., 479; United Workmen v. Stumpf, 24 T. C. A., 309; Osborne v. Barnett, 1 App. C., sec. 125; Life Ins. Co. v. Fitzgerald, 1 App. C., sec. 1346. But jurisdiction over subject matter can not be conferred by consent. Wynns v. Underwood, 1 T., 48; Swigley v. Dickson, 2 T., 192; Foster v. McAdams, 9 T., 542; Burnley v. Cook, 13 T., 586; Life Ins. Co. v. Ray, 50 T., 511; Henderson v. Beaton, 52 T., 29;

And it is undoubtedly true that in courts proceeding according to the course of the civil law, an appeal from an inferior to a superior tribunal removes the whole proceedings, and usually, though not invariably, opens both the law and the facts for re-examination.   3 Dallas, 321; 5 Cranch, 281.

By the eighth section, fourth article of our Constitution, we find the Supreme Court of Texas clothed with appellate jurisdiction only, which shall be coextensive within the limits of the Republic; but neither in that section or elsewhere in the Constitution do we find its appellate jurisdiction restricted to any particular class or character of actions. We search in vain in that instrument for any such restriction.   It can not be found.   But on the contrary, in the Declaration of Rights, it is emphatically declared that all courts shall be open, and "every man for any injury done him in his lands, goods, person or reputation, shall have remedy by due course of law."   Dec. of Rights, sec. 11.

We think it clear then that the right of appeal from the district court to the Supreme Court in criminal prosecutions, as well as in civil actions, is secured to the defendant in such prosecution by the Constitution.   But if we were of opinion that any doubt could be entertained of the clear and indefeasible right to an appeal in criminal cases, by the Constitution (and indeed we have none, but rest it upon that instrument alone), that doubt would in a great measure be removed by the act entitled "An act to establish and organize the Supreme Court, and to define the powers and jurisdiction thereof."   In the third section of that act there is a legislative declaration of the right of appeal in criminal as well as civil cases: "And the said Supreme Court shall have jurisdiction over and hear and determine all pleas, plaints, motions and controversies, civil and criminal, which may be brought before it."   And in the sixth section the same right of appeal is clearly and indisputably recognized in language which none can mistake, in the following words: "The sentence of the Supreme Court, in all criminal prosecutions brought before such court from any other courts, shall be executed in like manner in all respects as if such sentence had been rendered in the court wherein the prosecution originated; and the sheriff of the proper county shall be charged with the execution of such sentence."   Hence we see that immediately after the organization of our government, a legislative declaration of the constitutional right of appeal in criminal cases was made.   But it was contended by the district attorney for the Third Judicial District and by the Attorney-General, that if indeed the Supreme Court had jurisdiction of criminal cases and could hear and determine all manner of pleas, plaints, motions and controversies, civil

Smith v. Parks, 55 T., 82, 86; Watson v. Baker, 67 T., 48, 50; Griffin v. Brown, 1 App. C., sec. 1099; Haney v. Milikin, 2 App. C., sec. 223.   The principle of set-off is statutory and analogous to "compensation" in the civil law.   It is unknown to the common law and was engrafted into our law by Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 236), to avoid multiplicity of suits.   Bates v. Republic, 2 T., 616; Thomas v. Hill, 3 T., 270; Holliman v.

and criminal, yet it could exercise that jurisdiction only by writ of error, and not by appeal; that the common law having been adopted by the Constitution in criminal proceedings became a part of that instrument, and by that law a cause was removed from an inferior to a superior tribunal by writ of error only and not by appeal; that by a writ of error, the errors of law alone could be examined in the Supreme Court, and that the usual effect of an appeal from an inferior tribunal being one that opened the facts as well as the law for re-examination, could not be admitted as a right to the defendant in the district court in a criminal prosecution, because no such right was ever known to the common law of England.

We frankly admit that we search in vain in the common law for an instance of an appellate court retrying the cause upon the facts; and we know that the only mode known to the common law of removing a cause from an inferior to a superior tribunal was by writ of error. But we can not admit that in adopting the common law, the Convention intended thereby to adopt irrevocably the practice of the common law in criminal proceedings, and tie down the Legislature of the country to the common law course of proceedings. For we see that the very framers of the Constitution itself, after adopting the "common law as the rule of decision in criminal proceedings," have gone on and made considerable innovations in the practice of that very code which they had just adopted. At common law, in criminal cases, the defendant had not the right to have compulsory process to compel the attendance of witnesses, etc. He had not the right to be heard by counsel, except upon collateral or incidental questions; he had not the right of the writ of habeas corpus; nor did he, indeed, have the right of the benefit of testimony in his favor under the sanction of an oath; all of which is secured to the citizen by our Constitution and are innovations in the practice of the common law. It is our opinion, then, that the Convention intended only to adopt the common law, to use their own language, "as the rule of decision" in criminal proceedings, and no more of the forms and peculiar writs of that code than might be found necessary to carry out the objects contemplated by that adoption. And surely the Convention never intended, when they inserted in the Constitution a provision creating an appellate court in criminal as well as civil cases, to deny the accused who might wish to appeal from the district court to the Supreme Court the right of having the facts of his case, as well as the law, opened to re-examination. We can not believe it. We decide then that the defendant in a criminal prosecution in the district court has the right of

Rogers, 6 T., 91; Fitzhugh v. Orton, 12 T., 4. Set-off must be mutual and due in the same right with the debt sued on. Allbright v. Aldrich, 2 T., 166; Wright v. Treadwell, 14 T., 255; Simpson v. Huston, 14 T., 476; Bullock v. Dunbar, 17 T., 243; McCorkle v. Lawrence, 21 T., 731; Hamilton v. Van Hook, 26 T., 302; Riley v. Runkle, 29 T., 92; Maxey v. Besser, 44 T., 506; Evans v. Bell, 45 T., 553; Masterson v. Goodlett, 46 T., 402; Casey v. Hanrick, 69 T., ·44; Pires v. Snodgrass, 91 T., 105; Sheilds v. Stark (T. C. A.), U. R. C., 1899. Not required to be mutual and due in same right, where plaintiff is insolvent or a nonresident. Hanchett v. Gray, 7 T., 549; Castro v. Gentiley, 11 T., 28;

appeal to this court from the judgment or sentence of the court below, and to have the facts as well as the law, at his own election, opened for re-examination.

Having disposed of the preliminary question that the defendant in a criminal prosecution in the district court has the right of appeal from the judgment of that court to the Supreme Court, and shown conclusively, as we believe, that the Constitution has given the Supreme Court jurisdiction by appeal in criminal cases, we will next proceed to inquire whether it was error in the court below, in the case now under consideration, in overruling the motion in arrest of judgment. We will consider this decision of the district judge with an eye both to the law and the facts as shown by the record.

The motion in arrest of judgment was predicated upon the fact that the "dealing of faro, the offense charged in the indictment, was committed before the passage of the act entitled 'An act creating the County of Travis,' and within the then territorial limits of Bastrop County." Numerous authorities were cited by the counsel for the appellant upon the trial of this case in the Supreme Court to show that it was error in the court below to overrule the motion; but we are unable to see their application in this case, and we are satisfied that they do not comprehend this particular case. The motion was bad in arrest of judgment and properly overruled. If the reasoning was good in support of the motion in arrest, it would be equally good under similar circumstances in Bastrop County, because it was once called "Mina;" and in Harris County, because it was formerly called "Harrisburg." The present Congress has passed an act dividing Red River County into Red River, Bowie and Lamar; and this doctrine, if it were correct, would protect from just punishment any offender, however flagrant his offense, if committed before the passage of the act dividing the county, unless the offense should have been committed within the new territorial limits of Red River County. The counsel for the appellant with candor admitted that the appellant could not have been properly indicted and tried in Bastrop, and contended that inasmuch as the act creating the County of Travis contained no special provision for such cases as that of the appellant, that he could not be legally tried and convicted in either county. But what, we will ask, was the intention of the Legislature in passing the act creating the county of Travis? Was it to protect the guilty from punishment? Was it to open the prison doors to them that were bound, without making any compensation to an injured community and the violated laws? Was it to encourage crime, and insult the majesty of

Simpson v. Huston, 14 T., 476; Aycock v. Doty, 1 App. C., sec. 223; Bolton v. Sadler, 1 App. C., sec. 1227; Melvin v. Chancy, 8 T. C. A., 252; Fleming v. Stansell, 13 T. C. A., 558; Neely v. Grayson Co. Bank, 25 T. C. A., 513; El Paso National Bank v. Fuchs (T. C. A.), U. R. C., 1895; Anderson v. Whitehead (T. C. A.), U. R. C., 1901. Unliquidated damages can not be set off or plead in reconvention against a liquidated demand or debt, and vice versa. Rev. Stats., 1895, art. 754; Walcott v. Hendrick, 6 T., 406; Carothers v. Thorp, 21 T., 358; Cato v. Phillips, 28 T., 101; Walker v. Burks, 48 T., 206; Craddock v. Goodwin, 54 T., 578; Parks v. Dial, 56 T., 261; Riddle v. McKinney, 67 T.,

the Constitution? No! It had other motives and other intentions in view. Of this we are certain. And what they intended is binding upon us in expounding the law. And so we decide and affirm the judgment or sentence of the court below with costs, and order that this cause be certified to said court according to law, and that the sentence of said court be executed according to the record.

*Affirmed.*

Judges Hutchinson and Scurry say: "We concur in the result of this opinion; and that result, though attained by the members of the court upon some diversity of reasoning, etc., is to be the law of the case."

Nothing on record to show any further concurrence.

## No. XVII.

### REPUBLIC OF TEXAS v. DAVID LAUGHLIN.

#### (See Note 19.)

*Appeal from Travis County.*

BAYLOR, JUSTICE.—In the District Court of Travis County, David Laughlin was tried on an indictment which charged him with having willfully, corruptly and erroneously taken and and demanded of one J. C. Tannehill a greater fee than is allowed by law for a certain judgment rendered by Laughlin as a justice of the peace for said county, in a civil action wherein one Wm. Y. Wood was plaintiff and said Tannehill was defendant, to-wit, the sum of twenty dollars in the promissory notes of the government; alleging said sum to be more than the fee allowed by law for costs in such cases; contrary to the duty of said Laughlin in his office, as justice aforesaid, and against the laws and statutes in such cases made and provided.

On his plea of not guilty, a verdict was rendered finding him guilty as charged.

Reasons in arrest of judgment were filed, and the district court, without rendering any judgment on the verdict or deciding the motion in arrest of judgment, referred to the Supreme Court for their "consideration and discretion, the matters of law arisng on the various grounds urged in arrest of judgment, as questions difficult and novel."

Before we are permitted to decide the several points made in this case, we feel it to be our duty first to dispose of a preliminary question; and that is, whether the record and proceedings before us make out a proper case for the interposition and decision of this court.

---

29; Howard v. Randolph, 73 T., 454; Rogers v. Watson, 81 T., 400; Taylor v. Bewley, 93 T., 524; Dempsey v. McKennell, 2 T. C. A., 284; Bank v. Kilgore, 17 T. C. A., 462; Santleben v. Froeboese, 17 T. C. A., 626; Taylor v. Bewley, 23 T. C. A., 509; Worley v. Smith, 26 T. C. A., 270; National Guarantee and Loan Co. v. Thomas, 28 T. C. A., 379; Davis v. McDowell, 1 App. C., sec. 380; Couch v. Parker, 1 App. C., sec. 438; Schmidt & Zeigler v. Rost, 1 App.

The Constitution of this Republic in directing the organization of the Supreme Court provides "that it shall have appellate jurisdiction only." Under a similar provision found in the Constitutions of other countries whose institutions and laws are analogous to our own, it has been decided that their supreme courts can not entertain jurisdiction in any case until judgment has been rendered in the court below, or unless it be to do some act in aid of their appellate jurisdiction.

The doctrine thus settled we leave open to future consideration, as it is sufficient for us to decide that nothing final has been done in this case from which an appeal can be taken.

The judge of the district court should have rendered judgment, subject to the opinion of this court, on the points reserved. By section 43 of the act establishing the districts courts, the judge of any district court may at his discretion in any criminal case reserve a question of law, which to him may appear novel and difficult, for the consideration and discretion of the Supreme Court at the next succeeding term, and the Supreme Court shall pronounce such *sentence,* or *judgment,* as the district court ought to have pronounced.

We think that this section of the act does not enlarge the jurisdiction, but that the only construction which can be given to it consistently with the *paramount law* is, that it provides an additional mode of bringing a case of this nature into this court, after judgment shall have been rendered in the court below.

This case having been sent up by the direction of the judge of the inferior court, it is ordered to be remanded to the District Court of Travis County, without costs, for the final action and adjudication of that court.

## No. XVIII.

### Solomon C. Rice v. Geo. Powell

*Appeal from Washington County.*

HUTCHINSON, Justice.—Powell sued Rice in respect of a draft of the auditor in his favor on the Treasurer of the Republic for $330, stating ownership; that it was pledged for a small sum, which had been tendered and the draft as well as its sum demanded but withheld; that Rice was about to leave Texas for the United States, and that therefore Powell, the plaintiff, asked writs of citation and attachment, and judgment for $330, Texas promissory notes, with interest and costs; or such other relief as should consist with law and equity. There was an affi-

---

C., sec. 684; Le Geirse v. Mathews, 1 App. C., sec. 779; Pittman v. Keith (T. C. A.), U. R. C., 1893; Wilson v. Manning (T. C. A.), U. R. C., 1896; Norwood v. Bank (T. C. A.), U. R. C., 1898; Hansen v. Yturria (T. C. A.), U. R. C., 1898; Presnall v. McLeary (T. C. A.), U. R. C., 1899. Except when the set-off is founded on a cause of action arising out of, or is incident to, or connected with, plaintiff's cause of action. Rev. Stats., 1895, art. 755; Egery v. Power, 5 T., 501; Walcott v. Hendrick, 6 T., 406; Hammons v. Belcher, 10 T., 271;

davit stating that the defendant had informed the plaintiff he was about to leave the Republic; and the fiat of the district judge, awarding the writs prayed, on bond being given in half of the sum demanded, with conditon to pay the damages to be sustained. On the 13th February, 1839, the petition was filed, granted; writs issued, and the attachment served on a keel-boat and the summons served on the defendant. The defendant, by way of plea, excepted to the process as illegal, and for that, and because of the insufficient affidavit and bond, prayed that the suit and proceedings should be quashed. On March 4, 1840, on his motion, the attachment was quashed by the court; a jury came, "who being sworn well and truly to try the issue joined by the parties," found for the plaintiff $323.75, "in the Treasury notes of the government of the Republic of Texas;" and there was judgment for that sum in such notes. If answer or plea to the merits was filed it is not exemplified; nor is any of the evidence certified.

Since the mode of civil prosecution according to the common law is not to be regarded, but that by petition and answer used; and since we are required to review proceedings in civil causes with an eye solely to the merits, we are reluctantly obliged to say that the narrative in the petition contains matters which, if true, amount to a civil inquiry of some sort. It was plainly correct to quash the attachment, and if that had been the only process, the suit should have followed that result; but though it was an abuse to pray and obtain in one and the same suit in the ordinary form process against the estate and the person, yet as the defendant was cited personally and appeared and pleaded, the order, on quashing the illegal writ, should have been, that the defendant have leave to answer or plead to the merits. It being stated in the postea that the jury were sworn to try the issue joined, we are left to infer he did answer or plead in bar; but from the negligence or want of skill in the clerk, it has not appeared in the transcript. The defendant can not urge as error the order quashing the attachment; it was on his motion and for his benefit.

But we can not sustain the verdict or judgment. On the facts stated in the petition, the plaintiff might have prayed restitution of the draft, and in that case the jury, on finding him entitled to it, should have so stated in their verdict, and assessed, in standard money, its value with the damages occasioned by the detention of the draft, on which the judgment would have been in the alternative, for the draft, if to be had, with the damages; and if not to be had, then the price assessed with those damages. Had specific restoration been a favorite or earnest object, and the detention either particularly injurious to the owner or

Castro v. Gentiley, 11 T., 28; Sterrett v. City of Houston, 14 T., 153; Brady v. Price, 19 T., 285; Bodman v. Harris, 20 T., 31; Ashworth v. Dark, 20 T., 825; Carothers v. Thorp, 21 T., 358; Duncan v. Magette, 25 T., 245; Coleman v. Bunce, 37 T., 171; Calhoun v. Pace, 37 T., 454; Beckham v. Hunter, 37 T., 551; Hoodhue v. Myers, 58 T., 405; Scalf v. Tompkins, 61 T., 476; Satterthwaite v. Loomis, 81 T., 64; Du Bois v. Rooney, 82 T., 173; Paschal v. Penry, 82 T., 673; Imperial Co. v. Bank, 5 T. C. A., 686; Brown v. Montgomery, 19 T. C. A., 548;

attended with circumstances of aggravation, the jury might have fixed the value so high as to have insured the restitution. In no way were Texas promissory notes demandable on the draft from the defendant. It was no evidence of his promise, or obligation to pay those notes, but they appeared payable on it at the Treasury. The jury, however, might have treated the suit as in the nature of an action of trover and assessed in damages, in lawful money, the value of the draft and the damages produced by its detention, putting both together into one amount. Their verdict being for Treasury notes, without any ratio or criterion of value formed, a valid judgment could not be rendered on it. A pecuniary judgment or decree can be given alone for a sum or sums in the currency of the Constitution. Congress has no power to require a creditor at large, or by adjudication, to receive in satisfaction any money other than specie, if required; and hence it would be worse than idle to adjudge or decree, and issue process to collect any other medium. It is true that tender may be good, if made in an inferior currency, if not objected to by the creditor; but his constitutional right to have the standard money can not be impaired; nor is it perceived that Congress has attempted it. To require the taxes and debts due to the government to be received in the emitted evidences of its own debt, can in no sense be illegal; and whether it be allowable or not to require ministerial and other offices to receive government notes in payment of salaries and fees, can be decided when the question is directly presented. We need not go into the learning upon the subject of the English jurisprudence on the topics presented in this case in regard to specie and an inferior currency; our Constitution has erected a standard of value which, in all matters of contract and pecuniary liability as among the citizens and in view of adjudication, can never be transcended or disregarded.

No other question has been raised in this case, nor does the record seem to present any other. The judgment must be reversed and the cause remanded. Some of the court have hesitated as to remanding; but a majority concur in that, and all of us agree in the reversal for the reasons given.

This cause coming on to be heard on the transcript of the record and the same being inspected, and the arguments of counsel heard, because it seems to the court here that in the proceedings below there is manifest error, it is therefore considered by the court here that the judgment herein by the District Court of Washington County be reversed and annulled; that the appellant recover of the appellee as well his costs in this behalf in this court expended, as the costs in the court below ex-

Howard v. Moore, 1 App. C., sec. 225; Bacon v. Lloyd, 1 App. C., sec. 285; McDonnell v. Bitters Co., 1 App. C., sec. 1160; G. C. & S. F. Ry. Co. v. Tacquard, 3 App. C., sec. 250; Scott v. M. N. Ry. Co., 4 App. C., sec. 287; Streeper v. Thompson (T. C. A.), U. R. C., 1893. Insolvency of plaintiff is no ground for setting off unliquidated damages against liquidated. Walcott v. Hendrick, 6 T., 406; Duncan v. Magette, 25 T., 245; Fondren v. Leake, 1 U. C., 151; Bennett v. Carsner, 1 App. C., sec. 619; Knight v. Old, 2 App. C., sec. 78; Smith v. Bates (T. C. A.), U. R. C., 1894; Presnall v. McLeary (T. C. A.), U. R. C., 1899. Liquidated debts or damages may be set off against liquidated. Sheldon v. Martin, 65 T., 409; Jones v. Hunt, 74 T., 657; June v. Brubaker, 5

pended by him prior to the said judgment; and that this cause be remanded to the said district court, with instructions to allow the appellee to amend his petition if he so desire, and the appellant to plead or answer to the merits; and that a new trial be had.

*Reversed and remanded.*

## No. XIX.

### D. G. & R. MILLS v. EDWIN WALLER.

(See Note 20.)

*Appeal from Brazoria County.*

HEMPHILL, CHIEF JUSTICE.—The appellants commenced their suit in the District Court for the County of Brazoria on the 28th day of February, 1837, against one John Thomas, to recover a debt of $958.22, with interest at 10 per cent from the first day of October, 1836, being the balance due on a note of hand drawn by the said Thomas in favor of the appellants, and dated the 17th day of May, 1835. The petition prayed for a writ of attachment, alleging that the said Thomas was an absentee, and that he owned a tract of about 800 acres of land in the county of Brazoria. The attachment was issued and executed on the day above named on the land described in the petition. On the 4th of March following, a supplementary petition was filed, alleging it had been discovered that the said Thomas had property of a movable nature within the county, and that unless the same were attached they feared the loss of their debt—the land being incumbered with a mortgage belonging to McKinney and Williams. On the second writ of attachment issued, the sheriff made the following return: "Not being able to find the specific property described in that instrument, I thereupon seized and sequestered all the property in this county in the *defendant's brand.*"

At the succeeding term of the court, the curator appointed to represent the interests of the absent defendant put in his answer, disclaiming for the defendant all right, title and interest in the land attached, and that long prior to the levying of said attachment the land had been sold by the said Thomas to one Moses L. Patton. At the said term of the court, Edwin Waller, the appellee, filed his plea of intervention, alleging his ownership of the land attached, and that it was in nowise responsible for the liabilities of Thomas. The appellants put in a general denial of the allegations of the intervener, and at the spring term of the court of 1838, the jury found a verdict in the following terms: "We, the jury, find judgment for Mills against Thomas for $950.22,

T. C. A., 79; Bank v. Lynch, 6 T. C. A., 590; Walker v. Fearhake, 22 T. C. A., 61; Bank v. De Morse (T. C. A.), U. R. C., 1894; Snelling v. Koerner (T. C. A.), U. R. C., 1894. Unliquidated against unliquidated. Bodman v. Harris, 20 T., 31; Sanders v. Bridges, 67 T., 93; Taylor v. Bewley, 93 T., 524. But damages arising from separate torts can not be set off against each other. Hart v. Davis, 21 T., 411; Boyd v. Clark, 21 T., 426; Shook v. Peters, 59 T., 393. **Mutual**

with interest at 10 per cent from the 1st of October, 1836, as specified in the note, and that the property attached is not liable for the debt." Judgment was in accordance with the verdict, and we are asked to reverse the same on various grounds.

1.  It is alleged to be manifestly erroneous in not condemning the personal property attached as liable to the demand of the appellants. The return of the sheriff to the second writ of attachment is exceedingly indefinite.  He does not enumerate the articles of property levied on, nor does he affirm that they are property of the defendant; but that being unable to find the specific property described in the instrument, he had seized on everything in the *defendant's brand*.  With this vague return of the sheriff, and in the absence of all proof that the articles attached belonged to the defendant, we are of opinion that the jury was justified in finding that the said property was not liable to the debt of the appellants.  But the decision of this question is unnecessary. The appeal bond has been executed in favor of the intervener alone; and our revision of the decision of the court below will not extend beyond the matters in controversy between the said intervener and the appellants.

2.  That the sale from Thomas to Patton was void, on several grounds.  First, the disparity between the price paid by Patton and the value of the land raises a violent presumption of fraud, which amounts to conviction when it is observed that Patton in his subsequent sale to Waller refuses to warrant against any existing lien.  Patton purchased the land from Thomas in the town of Liberty on the 3d of April, 1836, for $1000, and on the 24th day of February, 1837, sold to Edwin Waller, the appellee, for $5500.  It appears that the sale from Thomas to Patton took place at a time when the county of Brazoria was invaded by the Mexicans and generally abandoned by its inhabitants.  It is stated that the land was proven to be worth $7000.  It is to be regretted that facts are not more fully and clearly set forth in statements furnished from the courts below.  We are not informed whether this was the value of the land at the period of its sale to Patton, or at the time of the trial— whether it was worth $7000 when the country was occupied by an overwhelming invading army and subjected to all the horrors of war, or in a period of comparative peace and prosperity.  To raise the presumption of fraud the disparity must be shown to exist between the consideration paid and the actual value of the thing at the period of sale.  We are not informed that this was attempted in this case, and the verdict of the

accounts may be set off against each other.  Hall v. Hodge, 2 T., 323; Crook v. McGreal, 3 T., 487; Campbell v. Park, 11 T. C. A., 455.  Usurious interest against principal.  Huggins v. Citizens Bank, 6 T. C. A., 33.  Apparent legal holder of note may plead it in set-off.  Thomas v. Young, 5 T., 253.  Courts have power to set off mutual judgments against each other, independent of statute.  Simpson v. Houston, 14 T., 476; Duncan v. Bullock, 18 T., 541; Dutton v. Mason, 21 T. C. A., 389. Debt due deceased person or his estate may be set off in an action by legal representative, though it has not been presented for allowance.  Morton v. Gordon, Dal., 396; Thomas v. Hill, 3 T., 270; Smalley v. Trammell, 11 T., 10; Hall v. Hall, 11 T., 526; Dickenson v. McDermott, 13 T., 248; Mitchell v. Rucker, 22 T., 66; Andrus v. Pettus, 36 T., 108; Alford v. Smith,

jury repelling the presumption of fraud, we are forced to the conclusion that the value proved referred to the time of the trial and not of the sale. From such evidence, the jury were not authorized to infer that the price paid for the land two years previously was so grossly inadequate as to be fraudulent against third parties, and especially when it is recollected that the sale was effected when the county was deserted by its inhabitants, desolated by a powerful invading force, and by many of the best patriots believed to be irretrievably lost.

There is no evidence that Patton had any knowledge at the time of his purchase of the existence of the demand of appellants against Thomas. This must be proven before the alienation to Patton could be set aside as fraudulent. It is not sufficient to establish fraud on the part of the vendor and actual injury to creditors; but a knowledge of the fraud on the part of the vendee must also be proven. In Curia, Phillip, Lib. 2, chap. 13, the law on this subject is expressed in the following terms: "Y asi en la enagenacion por titulo oneroso, se requieran tres cosas; fraude de parte del enagenante, y sciencia de el de parte del recibiente, y el evento o suceso del fraude en dano de los acseedores." See also Kenney v. Dow, 10 Martin, 577. Nor is there proof that the insolvency of Thomas was known to or suspected by Patton, or that the creditors of Thomas would be injured or affected by the purchase of the land. The fact that Patton in his sale to Waller refused to warrant against any other claim to the land than his own, does not in our opinion raise the presumption of fraud in the first transaction. Nearly eleven months elapsed between the first and the latter sale. Ample time was afforded Patton to become acquainted with the fact of incumbrances and claims against the premises; and his refusal to give more than a quitclaim title can not be regarded as other than an evidence of a desire on his part to avoid litigation.

But it is said that the sale from Thomas to Patton was an act under private signature; that the law of Louisiana in relation to attachments was then in force in this Republic, and that under that law it has always been decided that an attaching creditor had a preference over a purchaser under private act not recorded; and that therefore the sale to Patton has no force and validity as against the appellants. The decisions referred to were not founded on any provisions of the act regulating attachments; but on various other articles of the code prescribing the effect and operation of sales under private signature as between the parties to the same, and also in relation to third persons. This portion

---

40 T., 77; Traders Bank v. Cresson, 75 T., 298; Chapman v. Brite, 4 T. C. A., 506; Walker v. Fearhake, 22 T. C. A., 61; Collins v. Barbee, 3 App. C., sec. 126. If claim has been approved, can not be used as set-off without showing necessity for equity. Robb v. Smith, 40 T., 89; Floyd v. Rust, 58 T., 503. Executor can not set off damages for harassment and attorney's fees against claim due from estate; nor a debt due the estate by an assignor of a claim due by the estate. Selkirk v. McCormick, 33 T., 136; House v. Collins, 42 T., 486. An heir can not set off a debt due estate with his distributive share. Guthrie v. Guthrie, 17 T., 541. Set-off can not be allowed against State, unless authorized by statute. Borden v. Houston, 2 T., 594; Bates v. Republic, 2 T., 616; Chevallier v. State, 10 T., 315; Dean v. State, 54 T., 313, 314; State v. Snyder, 66 T., 687.

of the laws of Louisiana has never been in force in this Republic; and the decisions thereon can not be regarded as authority. It can not be denied, however, that the provisions of the laws of Spain in relation to private acts are similar to those of Louisiana, and that under both systems it is an established principle of law (though not without several modifications and exceptions) that acts under private signature have no dates as against third parties. The subject is not without its perplexities; but it will be sufficient to discuss and resolve them when they fairly arise in a case before the court. In the present instance it is unnecessary. The objections made to the act of sale is, that it was under private signature, and therefore inoperative against the appellants. Without touching on the subject of conveyances generally, we are of opinion that this was not a private, but an authentic act. It was executed before a notary public, with instrumental and assisting witnesses, and is free from all the objections which could be urged against it as an act under private signature. If it were agreed that this conveyance was effected by the registration law of 1836, yet it was not required to be recorded until long after the commencement of the action. It is, however, clear that the rights of the parties arose under the laws in force at the time of the execution of this instrument; that they are controlled and established by these laws, and not by subsequent acts of legislation.

Upon the consideration of the whole matter, the jury having found in favor of the appellee, and there being no sufficient proof to rebut the presumption always arising that a verdict is correct, we are of opinion that the appeal should be dismissed; and it is hereby ordered and decreed that the same be dismissed, and the judgment of the court below be affirmed.

*Dismissed.*

## No. XX.

### Wm. G. Hill v. Wm. McDermot et Ux.

#### (See Note 21.)

*Appeal from Brazoria County.*

HUTCHINSON, JUSTICE.—On the 9th of September, 1837, the appellees sued the appellant for restoration of the slaves Priscilla and her child Sylvia, or their value with damages and costs. The answer admitted defendant's possession, denied title in the plaintiffs, and averred that the defendant purchased from Edwin Waller, praying that he should be cited as warrantor. Waller answered, impleading Fitchett and Gill, his vendors; and they answered that they purchased from John Chafin, and impleaded his administrator, who in his answer denied the

---

When two are separately liable for the whole debt, it may be set off against either of them. Rust v. Burke, 57 T., 341; Fleming v. Stansell, 13 T. C. A., 558. Creditor of husband can not set off debt of husband against use and

allegations in the petition. There was a verdict for the plaintiffs against the defendant, and verdicts over for the respective vendees against their warrantors; but a new trial was granted. An amended petition was then filed, alleging that Chafin, in 1836, forcibly took from plaintiff Elizabeth, then the widow of Whitfield Sledge, the two slaves, which she believed her property, and of which she was peaceably possessed at the seizure. The answer to this is only a general denial, relying on prescription. On the 23d of March, 1840, there was a verdict finding the slaves to be the property of the plaintiffs, and assessing $900 as their value, and $350 the damages for their services; and a judgment for them for those sums with their costs.

The evidence, so far as certified, was that Sledge and wife emigrated from Georgia to Texas prior to August, 1835, in which month he died; that they brought with them the woman Priscilla, whose child Sylvia was born in Texas, though when born does not appear; that Sledge, on January 13, 1834, at Brazoria, made to John S. D. Byron the deed for Priscilla of that date, to secure $69 at three months; and on April 3, 1834, made a deed to Chafin for the same slave, to secure him on the 1st of January following $342, with 12½ per cent interest, the Byron debt, with 5 per cent per month, and $25 borrowed by Pace; and that in the spring of 1836, Chafin, with force, took both slaves out of the possession of the plaintiff Elizabeth and carried them away. The deponent Tennelli, in his deposition, states that he knew the slaves were the property of the female plaintiff; but also mentions that he never heard Sledge or anyone else say the negro was exclusively her property. The deeds were acts under private signature, but were proved in court at the trial; and there was evidence of the value and hire of the slaves. It is not certified by the judge, nor does it otherwise appear, that these were all the facts proved. The court instructed the jury that the wrongful taking of the slaves could not be ground of damages between the present parties; that if the mortgage to Chafin was valid, or if the property in the negroes belonged to the succession of Sledge, they should find for the defendant; but if they believed from the evidence that the entire property in the slaves, at the taking, was in Sledge's widow, they should find for the plaintiff.

It is correctly contended that this being an action to recover specific property, it was incumbent on the plaintiffs to show title in themselves, and they could not prevail upon the mere want of title in the defendant. The suit involved the absolute right, dominion or ownership in the negresses, the demand being in that right; and to have justified a recovery, there should have been sufficient evidence of the allegation.

hire of wife's separate property. Carr v. Tucker, 42 T., 330. Quaere—Can damages growing out of suit in another State be pleaded in set-off in this State? Wiley v. Trawick, 14 T., 662; Withee v. Fearing, 23 T., 503. An assigned debt may be set off with a debt due from assignor before notice of assignment. Townsend v. Quinan, 47 T., 1; Fry v. Houston, 6 T. C. A., 710; Ellis v. Kerr, 11 T. C. A., 349; Tyler Car and Lumber Co. v. Wettermark, 12 T. C. A., 399; Henderson v. Johnson, 22 T. C. A., 381; McCarty v. Squyers (T. C. A.), U. R. C., 1896. Defendant may plead any set-off acquired before

Any defect in the averment of title was cured by the answers, denying the right claimed. Our chief embarrassment, however, arises on the inquiry, whether the record shows, all things considered, that the jury had evidence or grounds legally sufficient to authorize their verdict for the plaintiffs. We have only what Tennelli, in his deposition, says in regard to the ownership of the plaintiff Elizabeth. If he knew, as he asserted, that the slaves belonged to her, it was immaterial what her former husband or anyone else had declared or had not declared. The question on the trial might have been raised whether such oral testimony of ownership was competent, or whether there was any higher evidence extant and not produced; but nothing of this sort was agitated. If the witness was interrogated as to the circumstances of the acquisition, as for instance, how, when, of whom, where and by what contract, solemnity or process she had become the owner of Priscilla, the evidence thus elicited should have been certified. The judge in his statement of the proof does not attempt the minutia, but gives only what were, in his estimation, results of the proof; or more indefinitely that such and such facts were in evidence. Two juries have found ownership in the plaintiffs; and the party, considering himself aggrieved should have had such a memorial made of the proof as would have satisfied the revising court that the whole, in substance at least, was embodied. Even then we would have been in a condition to consider only, but not weigh it; yet still we should have been better assured of the conclusions we should derive from it. Taking the exhibition of the proof sent up as containing the whole, we are not satisfied with the assumption by the appellant's counsel that there was a failure to prove title in the plaintiffs. We are not to presume that anything was proved but what is certified; but, in favor of two concurring verdicts, we assume as true that there was no evidence of the laws of Georgia concerning the rights of the wife in personal property in the possession of the husband or family; that there was no proof of an administration on the estate of Whitfield Sledge, nor any evidence of there being any heirs of the decedent. But it is insisted that this court knows, as a matter of public national history, that the common law in Georgia regulated the relation of Sledge and wife, and gave to the husband the whole personal estate, in the absence of a legitimate express contract giving the wife a separate property. We are presumed to know what doctrines of the common law pertain to the jurisprudence of Texas; but this presumption does not carry our judicial knowledge beyond the limits of the Republic as to any doctrine

filing plea. Thomas v. Young, 5 T., 253; Parrott v. Underwood, 10 T., 48; Wright v. Treadwell, 14 T., 255; Gaines v. Salmon, 16 T., 311; Lemmon v. Box, 20 T., 329.

**Note 14.**—Fowler v. Poor, p. 401.
Attachment proceedings must be commenced by petition or concurrent with same. Wooters v. McGee, 1 T., 17; Cordova v. Priestly, 4 T., 250; Bowers v. Chaney, 21 T., 362; Kennedy v. Morrison, 31 T., 207; Whitemore v. Wilson, 1 U. C., 216; Jones v. Stone, 2 App. C., sec. 358. Petitions not necessary in justice court. Henry v. Blasco, 1 App. C., sec. 765; but citation must issue before or at same time. King v. Robinson, 2 App. C., sec. 555. Is a harsh

or rule of municipal law of any kind in use in a foreign State. Were we bound to know the marital rights of a couple at a given date in Georgia, we should be bound to know those of another, at another date, in the Hebrides, in Hindoostan, in China, or in any island of Oceanica. We are to notice officially the jus gentium; but not the internal or municipal laws of other countries. These last must be proved—written laws by authenticated copies, and unwritten ones by the oral testimony of those skilled in them. In Gale v. Davis' Heirs, 4 Martin, 645, the judge delivering the opinion of the court referred to the laws of North Carolina in regard to the rights of the husband in personalty; and though it is not reported whether or not those laws were proved in that case, yet the doctrine for which it is cited is not ruled. That foreign laws must be proved is an established principle of the common law; and it is equally the rule according to the civil or Spanish law. Boggs v. Reed, 5 Martin, 673; Wakeman v. Marquand, 5 Martin (N. S.), 265.

The laws of the country in which the slave Priscilla was acquired by Sledge, or his wife, if they had been proved on the trial, would have governed in determining the ownership. Contracts made in a foreign country are to be expounded according to the lex loci contractus, whilst the remedies to enforce them are to pursue the lex fori. The maxim, "actor sequitur forum rei," is a part of the law of nations. Morris v. Eves, 11 Martin, 730; Lynch v. Postlethwaite, 8 Id., 69. When, however, the law of the place where the parties contracted or their rights originated is not set forth, the court is to proceed upon the domestic code. Campbell v. Henderson, 3 Martin (N. S.), 152. And where there is a conflict, it being doubtful which system of law should be applied, that of the forum prevails. Saul v. His Creditors, 5 Martin (N. S), 569. Here it is proved only that Sledge and wife emigrated from Georgia to Texas, not that they were married there, not that Priscilla was acquired before or after marriage, nor that the acquisition was in a civil or common law country. How then, upon the data and principles before us, does the question of title in the plaintiffs stand? A witness proves ownership of Priscilla and Sylvia to have been in the female plaintiff, with possession, when Chafin's tortious capture occurred. She was then the widow of W. Sledge, who had died the year previous. Whether he died estate or intestate, or with or without a devisee or heir was not shown—and whether the witness was or was not mistaken as to knowledge of ownership can alone rest on supposition and conjecture. If Sledge died without an heir of any class under the Spanish law; if, too, no one had obtained administration of the succession, in the ab-

and summary remedy and all precedent conditions must be strictly complied with. Raquet v. Nixon, Dal., 386; Sloo v. Powell, Dal., 467; Gregg v. York, Dal., 528; Sydnor v. Chambers, Dal., 601; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Totman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy, 58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Hotmann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwartz v. Burton, 1 App. C., sec. 1216;

sence of any proof showing that the husband had had the sole right, was not his widow the sole heir and owner and entitled to sue for restoration? "If no relation exist [such as might inherit] and the deceased leave a legitimate wife, she will inherit the whole of his estate; and we say that the husband will inherit from his wife in like circumstances." 2 Partidas, 1101, 1102.

We may now advert to the defendant's title. It is derived through intermediate vendors from Chafin, who by a violent seizure and asportation obtained possession. Had he title above that of a trespasser? The deeds produced to show his right, in the view of the Spanish law, were instruments of pledge, being of personalty, as contradistinguished from a mortgage which had for its object real estate. By that law the estate pledged, whether real or personal, constituted the chief distinction—the name, prenda, or hipoteca. Either afforded a security for the sum due. In a pledge of the voluntary class, such as that before us, possession of the pledge is not necessary to create the obligation. If the thing pledged had been sold by the pledgor before his delivery of it to the pledgee, the latter was put to his suit against the debtor; and after that he was allowed to sue for the thing pledged. The instrument of pledge might be transferred; but the pledgee might sell the thing, if no day of payment was fixed, on giving the debtor notice. If a day was named, then a judicial order and public auction were required. 1 White's Recopilacion, 139-143. There is therefore no ground on which to presume possession in Chafin; and if there were, the proof given shows the possession to have been in the female plaintiff, and in her family prior to the seizure.

The deeds of pledges, which under the common law would have been mortgages, were deeds under private signature, and took date, that is to say, acquired efficacy, only from the time of being proved on the trial, as against the plaintiffs, unless it had been shown that W. Sledge, the pledgor, was the sole owner at the giving of the pledges; for in the case excepted, the female plaintiff would have been affected as the wife of the pledgor. But it is not necessary to dwell or rely on this consideration. The deeds, especially that to Chafin, attempted on its face to secure $12\frac{1}{2}$ per cent interest per annum and 5 per cent per month, both illegal and usurious exactions, which rendered the pledge to Chafin wholly void. His deed was not such as would have been enforced either in the ordinary mode by judicial suit or by the award of executive process. He acquired no right under the deed because of its turpitude. "Contracts made by such persons (usurers) are null. The usurer for-

Scram v. Duggan, 1 App. C., sec. 1269. No presumption will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T., 610; Focke v. Hardman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352.

Note 15.—Cayce v. Curtis, p. 403.

At common law, the seal is an absolute requisite to the validity of a bond. Sloo v. Powell, Dal., 467. It is unknown to the civil law and not essential to the validity of obligations and other instruments. Cayce v. Curtis,

feits or loses that which he lends on usury and he pays as much more. Being a second time guilty of the offense, he forfeits the half of his property; and the third time, he forfeits the whole." 1 White's Recopilacion, 255; Herman v. Sprigg, 3 Martin (N. S.), 190. And the pledgee, not having and right or valid lien on the slaves, the subsequent vendees could take nothing under their purchases. There was no attempt to make an ostensible legal transfer under the deed by ordinary or executive process. There can be no objection to this rejection of the deed for usury. It is produced by the administrator of Chafin as evidence to sustain a vendee under him; and it bears on its face the taint of its own turpitude.

It is urged lastly, that if the recovery be permitted it will be no bar to a subsequent recovery by the heirs of Whitfield Sledge. To this we answer, that there is no heir disclosed other than the female plaintiff; and if there be any other heir and he shall sue, we are not at present prepared to say that he could prevail, if the recovery in this case should be duly pleaded and shown in bar of the action. It is sufficient, however, to remark that the allowance of such petitio principi might, in any case, defeat the recovery of the apparent owner.

Were we to take a different view of the evidence of ownership in the plaintiffs, we should nevertheless remand the cause; and this we should do in order to afford to a defendant, deriving title from a source that must remain impure, to protect his purchase, as against one whose peaceable possession was violently determined and who has the verdicts of two juries in favor of her ownership.

There being no evidence that Sylvia was born subsequent to the pledge, it is uncertain whether the right attempted to be derived under it included her; but as the judgment below is to be corrected and conformed to the verdict, it is needless to consider this matter.

The judgment ought to have been for the restitution of the negroes.

This cause coming on to be heard on the transcript of the record, and it being inspected, and the arguments of counsel heard, because it seems to the court that there is no error, except that the judgment below ought to have been for the restitution of the slaves, if to be had, with the damages assessed; and if not to be had, then the value and damages assessed; it is therefore considered by the court here that the said William McDermott and Elizabeth, his wife, recover of the defendant William G. Hill the slaves Priscilla and Sylvia, if to be had, with the damages for detention, assessed to $350, and the costs below; and if said slaves can not be had, then that they recover of him $900, the

Dal., 403; Cayce v. Horton, Dal., 405; Sloo v. Powell, Dal., 467; Foster v. Champlin, 29 T., 22. The common law term "bond" has never been adopted in this State and it is not necessary for bonds to have private seals. Foster v. Champlin, 29 T., 22; Courand v. Vollmer, 31 T., 397. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 327), providing that a scroll should take the place of a seal, provided it be recognized in the body of the instrument by the person making it, the recognition was not required to be in any specific terms. The use of any words in the body from which recognition could be fairly inferred, was sufficient. Flemming v. Powell, 2 T., 225; Eng-

value of the slaves assessed, together with those damages and costs; and it is further considered that the appellees, McDermott and wife, because of this correction of their judgment, do pay to the appellant, Hill, his costs herein in this court expended. Let this decision be certified below to be executed.

*Reformed and affirmed.*

## No. XXI.

### JAMES KNIGHT ET AL. v. GEORGE HUFF, ADMINISTRATOR, ETC.

*Appeal from Austin County.*

SCURRY, JUSTICE.—The petition in this case recites that John Dinsmore, James Cochran, surviving partner of Walter C. White, deceased, and W. D. C. Hall, jointly and severally promised to pay the said George Huff, administrator of Samuel Sawyer, deceased, the sum of $635. The instrument of writing upon which the said action is founded bears date the 15th day of November, 1835. It appears from the facts of this case that said Samuel Sawyer, on the 10th day of November, 1832, promised in writing to pay W. C. White & Co., on demand, the amount which might fall due to the said White & Co. from the estate of Lewis L. Vieder, deceased. It appears that by a settlement made before L. Lassassua, alcalde of the municipality of Austin, on the 10th day of May, 1833, between George B. McKinstry, administrator of the estate of the said Lewis L. Vieder, and the said Walter C. White for himself and company, that the estate of the said Lewis L. Vieder fell in debt to the said Walter C. White & Co. in the sum of $427.10, which determined the nature and amount of the said demand; which said demand was transferred by the said Walter C. White for himself and company to George Huff, administrator of the estate of the said Samuel Sawyer, on the 24th January, 1834.

From the testimony of J. H. Money and J. Benton Johnson, the chief justice and clerk of the county of Austin, it appears that George Huff, administrator of the estate of the said Sawyer, on the 24th day of August, 1838, exhibited his petition, praying that certain papers in possession of the estate of Wm. Barrett Travis, deceased, were material to the administration of the estate of the said Sawyer and in nowise connected with the estate of the said Travis, and among others the obligation of Sawyer of the 10th of November, 1832, which was delivered to Huff, as administrator of the said Sawyer in accordance with the prayer of the said petition.

---

lish v. Helms, 4 T., 228; Read v. Levy, 30 T., 738. The first section of Act of 1840 was restraining, and confined to instruments for conveyance of estates of inheritance or freehold or for a term of more than five years, and the intent to seal was sufficient, if expressed in any part of the instrument not within the purview of this section. English v. Helms, 4 T., 228; Clayton v. Pridgen, 8 T., 308; Conner v. Autrey, 18 T., 427; Muckleroy v. Bethany, 23 T., 163; Muckleroy v. Bethany, 27 T., 551; Richarz v. Wolcken, 34 T., 102. Under Act

From the testimony of Ira R. Lewis it seems that the note on which this action was founded was given by the appellants, White and Hall, at the succession sale of the said Sawyer, deceased (White signing the note for himself, Dinsmore and Cochran), for cattle purchased by the said White and Hall; and Lewis states that when called upon for a settlement of estates between Huff and himself—one as administrator of the estate of Vieder and the other of the estate of Sawyer—that Huff had Vieder's estate charged with the judgment of Walter C. White & Co., "and said that he had paid it with the note given for cattle purchased at the succession sale, before named," and that it was then a claim in his (Huff's) hands as administrator of the estate of Sawyer against Vieder's estate. The verdict of the jury was for the full amount of the note sued upon without interest.

The only question for the court to decide upon is whether the amount recovered against Sawyer as administrator of the said Vieder is a good set-off against the demand of Huff, as administrator. The court is of opinion that it is. The nature of the first obligation to Sawyer is uncertain; but is determined by the settlement made before Lassassua on the 10th of May, 1833. Huff, as administrator of Sawyer, on the 24th of August, 1838, by petition to the chief justice of Austin County and order of the probate court of said county came in possession of the obligation from Sawyer to White and White & Co., of the date of November 10, 1832, and from the testimony of the said Lewis it appears that he had charged the estate of the said Vieder with the identical amount of the said settlement of the 10th of May, 1833, which he said he had paid with the note "given for cattle at the succession sale of Sawyer in November, 1833." This testimony determines the nature of the suit. It is evident that when the purchase of the cattle was made in 1833, and the transfer of the amount due on settlement in May, 1833, in January, 1834, that the intention of the parties was that the amount of the settlement given in favor of White and White & Co. should be deducted from the amount of the note now sued upon, and therefore the court are of opinion that the offset should have been allowed and that there was error in the court below in not allowing the offset, and that judgment be rendered for the appellee for the sum of $207.90, and be taxed with the cost of this appeal.

of 1840, contracts to transfer land certificates and headright claims were not required to be under seal. Randon v. Barton, 4 T., 289; Bledsoe v. Cains, 10 T., 455. It was not necessary for an obligation to pay money, nor its assignment, to be under seal. Durst v. Swift, 11 T., 273; Jones v. Holliday, 11 T., 412; Holman v. Criswell, 13 T., 38. Nor was it necessary for a contract to sell land to be under seal. Miller v. Alexander, 8 T., 36; Holman v. Criswell, 13 T., 38; Fisk v. Miller, 13 T., 224; Eckhart v. Reidel, 16 T., 62; Martin v. Weyman, 26 T., 460; Courand v. Vollmer, 31 T., 397; Wright v. Lancaster, 48 T., 250, 256; Downs v. Porter, 54 T., 59, 64. A deed without seal or scroll was admissible in evidence to show equitable title in vendee, and deed was entitled to record under section 7 of Act of 1840, though not under seal. Miller v. Alexander, 8 T., 36; Saunders v. Hartwell, 61 T., 679, 686; Tom v. Sayers, 64 T., 339; Frost v. Wolf, 77 T., 455. Act of February 3, 1841 (Gammel's Laws of Texas, vol. 2, p. 608), providing that "when a husband and wife have sealed," etc., was not applicable to sales of personal property. Stooks-

## No. XXII.

### ISABELLA M. ANDREWS v. EDMUND ANDREWS.

(See Note 22.)

*Appeal from Brazoria County.*

HANSFORD, JUSTICE.—The transcript of the record from the court below (Brazoria) exhibits the following facts: At the fall term of the District Court of Brazoria County, Isabella M. Andrews commenced her suit against her husband, Edmund Andrews, praying to be divorced a vinculo matrimonii, and also praying for alimony pendente lite. That part of the petition of the plaintiff which prays for alimony pendente lite was granted at the said term of the court, and it was ordered, adjudged and decreed by the court that Edmund Andrews, the husband of defendant, pay to the attorney of record of Isabella, the sum of $500, and that on the first day of January, 1840, he pay the further sum, etc., during the pendency of the suit for divorce. The sheriff of Brazoria County made his return upon this order, or decree for alimony pendente lite, on the first day of October, 1840, by which it appears that the defendant refused to pay the several sums as ordered and decreed by the district court, and also refused to point out any property to be sold by the sheriff to be applied in conformity with the order or decree of the court.

At the October term, 1840, of the district court for said county, a motion was made by the counsel of Isabella for an attachment against the body of Edward Andrews for contempt, and to compel the performance of said decree for alimony pendente lite, which motion was overruled and refused, and to this decision the counsel for Isabella Andrews excepted and appealed to this court.

Whether the Supreme Court can entertain jurisdiction of this cause is, we think, the only question presented now for our consideration. As the decree was for alimony pendente lite, and consequently interlocutory, it would be manifestly incongruous and unseemly, to say the least of it, for the Supreme Court to entertain jurisdiction of and adjudicate upon the interlocutory decrees of an inferior court, while the substantive or original action upon which such decree is founded shall still be pending in the court below.

In Metcalf's case, 11 Coke, 38, it was decided that a writ of error would not lie in a judgment quod computet, because it was not a final decision; and it seems to be a rule of law, as well settled as any other rule, that a writ of error will lie only in cases where the judgment is

---

berry v. Swann, 12 T. C. A., 66, 73. Act of February 2, 1858 (Gammel's Laws of Texas, vol. 4, p. 968), dispensed with the use of seals on all private instruments, except contracts of corporations. This statute with the amendment of April 28, 1873 (Gammel's Laws of Texas, vol. 7, p. 503), constitute Rev. Stats., 1895, art. 4862. Harris v. Cato, 26 T., 338; Wimbish v. Holt, 26 T., 673; Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Bernhard v.

technically ideo consideratum est. Field, a writer of the greatest accuracy and of high celebrity, states the rue in the words of Coke, that there must be a final judgment, or an award in the nature of a judgment, or else a writ of error will not lie. 2 Tidd, 1062. These expressions are broad and it must be admitted are clearly opposed to the idea of a superior court entertaining jurisdiction and trying questions of mere interlocutory proceedings of inferior tribunals. Again, "A writ of error," says Lord Coke, "lieth when a men is grieved by an error in the foundation, proceeding, judgment or execution; but without a judgment, or an award in the nature of a judgment, no writ of error doth lie, for the words of the writ are 'si judicium redditum sit,' and that judgment must be regularly given by judges of record." Coke upon Littleton, p. 288. And we hear Lord Holt thus speak in delivering his opinion in the case of Grenwett v. Burwell, 1 Salkeld: "A writ of error will not lie upon a conviction and imprisonment for contempt." And we hold the converse to be equally true and based upon the soundest logic, that if a writ of error will not lie upon a conviction and imprisonment for contempt, it can not lie for the bare refusal of a court to punish for contempt. This would be too great an absurdity for any man of common understanding to support.

We shall quote but one other authority and then rest this case upon the general principles of the common law to support and confirm our conclusions. Chancellor Kent says: "A writ of error will not lie upon an interlocutory judgment in an action of account, because it is an award, as that an assize should be taken, or a writ of inquiry issued, or a partition be made. It is not a final and definitive judgment in a cause; and error only lies on a judgment in which all the matter in the original cause of action is determined. It would produce infinite vexation to the courts and oppression to suitors, if error lay on any other than final judgment upon the merit of the cause."

The same doctrine in relation to the writ of error applies with equal force to appeals. Under our judicial system, an appeal is a concurrent mode with a writ of error in removing a cause from an inferior to a superior tribunal, a mode pointed out by the Constitution. And it is very certain that the same reasons why a writ of error will not lie, until a final determination of a cause in the court below, apply with equal if not with greater force to an appeal. And our own statute is explicit on this subject. In the third section of the act creating the Supreme Court, we have the following language: "And the said Supreme Court shall have jurisdiction over and hear and determine all manner of pleas,

De Forrest, 36 T., 518; Clayton v. Mooring, 42 T., 182. Under the statute of 1858 and the present law, the following instruments are valid without seal: (a) Appeal bonds. Russell v. McCampbell, 29 T., 31; Read v. Levy, 30 T., 738; Hart v. Kanady, 33 T., 720; Boney v. Waterhouse, 35 T., 178. (b) Attachment bonds. Bernhard v. De Forrest, 36 T., 518 (overruling Read v. Levy, 30 T., 738; Courand v. Vollmer, 31 T., 397; Hart v. Kanady, 33 T., 720); Gasquet v. Collins, 57 T., 340. (c) Certiorari and sequestration bonds. Courand v. Vollmer, 31 T., 397; Clayton v. Mooring, 42 T., 182; Tompkins v. Toland, 46 T., 584. (d) Appointment of substitute trustee. Jacobs v. Mildred, 53 T., 72; Cheveral v. McCormick, 58 T., 440. (e) Official bond of county treasurer

plaints, motions and controversies, civil and criminal, which may be brought before it by appeal, or other legal process, from any other court in this Republic, which may be cognizable in said Supreme Court, according to the Constitution and laws; provided that no appeal shall be granted, nor shall any cause be removed into the Supreme Court, in any manner whatever, until after final judgment or decree in the court below, except in cases expressly provided for by law." The meaning of the proviso in this section surely can not be mistaken, and in the case under consideration the motion was incidental to a decree, which decree was itself pendente lite, or it was incidental to another action. It would create intricate confusion in judicial proceedings and greatly oppress suitors if such a practice were to prevail. Reason forbids it. The whole tenor of the common law is against it, and our statutes forbid it. It is then our opinion that this court can not entertain jurisdiction of this cause, and it is accordingly dismissed.

*Dismissed.*

Judges Hemphill, Scurry, Baylor and Terrell say: "We concur in the result, but not in the entire opinion."

## No. XXIII.

### C. J. O'CONNOR v. A. N. VAN HOMME.

(See Note 23.)

*Appeal from Brazoria County.*

TERRELL, JUSTICE.—Van Homme brought his action in the District Court for the County of Brazoria against O'Connor to recover the value of work and labor done and performed by the plaintiff, Van Homme, upon a house built by him for the defendant O'Connor.

The plaintiff declared upon a special agreement and likewise upon a quantum meruit. The case was submitted to a jury, who returned the following verdict: "We the jury in this case find for the plaintiff four hundred and ninety-one dollars." Upon this verdict the court rendered the following judgment: "It is therefore considered by this court, ordered and decreed, that the plaintiff recover of the defendant the sum of four hundred and ninety-one dollars, with interest thereon, at eight per cent per annum, from the thirtieth day of October, 1840, until paid, and the costs of this suit." A motion for new trial was made by defendant's counsel upon the grounds "that the verdict of the jury was contrary to law, contrary to the evidence, and not supported by the contract of the parties." Which motion being overruled by the court, the defendant appealed to this court.

In support of the appeal it is urged that the verdict of the jury was not warranted by the contract sued on, and that it was contrary both to

and county scrip. De Wees v. Colorado County, 32 T., 570; Parker County v. Courts, 2 U. C., 398. Written contracts of corporations should be under cor-

porate seal, but the ancient and technical rule that a corporation could act and speak only by its corporate seal is obsolete with us. Shropshire v. Behrens, 77 T., 275; Gas Co. v. Harber, 1 App. C., sec. 1123. Where an agent makes a contract under seal, without disclosing his agency, the party with whom he contracts can not elect to hold the undisclosed principal upon the contract. This principle is not changed by our statute. Rev. Stats., 1895, art. 4862; Sanger v. Warren, 91 T., 472. A contrary rule seems to be announced in Rutherford v. Montgomery, 14 T. C. A., 319, 323.